UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

SEAN MICHAEL RYAN,

        Plaintiff,

v.

UNKNOWN NORWOOD et al.,

        Defendants.
_____/

Case No. 1:14-cv-410

Honorable Robert J. Jonker

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Sean Michael Ryan presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF). Plaintiff sues the MDOC, MDOC Director Daniel Heyns and the following ICF personnel: Warden Willie Smith; Grievance Coordinator C. Lewis; Deputy (Unknown) Norwood, Librarian (Unknown) Novak and Library Tech. (Unknown) Orzola.

In his complaint, Plaintiff generally alleges that the "grievance system as it stands is inadequate to meet the demand of the P.R.L.A." and that the inadequacy of the grievance process violates Plaintiff's due process and First Amendment rights. (Compl., docket #1, Page ID#6.) Specifically, Plaintiff alleges that Defendants Lewis and Norwood retaliated against him for writing grievances by placing him on modified access on March 21, 2014. Plaintiff alleges that he would not have been put on modified access but for his grievance writing. Plaintiff alleges that his due process rights were violated by: (1) Defendants Lewis and Norwood when they placed him on modified access to prevent him from exhausting his administrative remedies in order to keep him from filing suit; and (2) Defendants Norwood, Smith, Heyns and MDOC when they placed him on modified access "without the protection of a full and fair hearing." (*Id.*) Additionally, Plaintiff alleges that Defendant Lewis violated his First Amendment right to file a grievance by not providing him with grievances forms and not responding to Plaintiff's legitimate requests for grievance forms.

Further, Plaintiff alleges that Defendant Smith and Heyns are liable for "failing to supervise, train and or discipline their subordinates" and "fail[ing] to intervene and correct the unconstitutional actions of their subordinates." (*Id.*) Plaintiff also alleges that Defendants Norwood, Heyns and Smith have failed to discipline, train or supervise Defendant Lewis.

Finally, Plaintiff alleges that Defendants Novak and Orzola violated his First Amendment and due process rights and his right to access the court by failing to make copies for Plaintiff.

As relief, Plaintiff seeks a total of $320,000 in damages comprised of various sums of punitive damages against the Defendants, as well as injunctive relief.

**Discussion**

I. Immunity

Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the MDOC.

II. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr.*

*Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Supervisory Liability

Plaintiff fails to make specific factual allegations against Defendants Smith and Heyns, other than his claim that they failed to supervise, train or discipline their subordinates. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Smith and Heyns engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them. Moreover, even assuming Plaintiff had alleged that Defendants Smith and Heyns engaged in active unconstitutional behavior, because each of Plaintiff's claims fails on the merits, he would still fail to state a claim upon which relief could be granted against Defendants Smith and Heyns.

### B. Interference with Grievances

Plaintiff alleges that Defendants Lewis and Norwood retaliated against him for writing grievances by placing him on modified access and that he would not have been put on modified access but for his grievance writing. Plaintiff alleges that his due process rights were violated by: (1) Defendants Lewis and Norwood when they placed him on modified access to prevent him from exhausting his administrative remedies in order to keep him from filing suit; and (2) Defendants Norwood, Smith and Heyns because they failed to ensure that Plaintiff was not placed on modified access without first having a hearing. Additionally, Plaintiff alleges that Defendant Lewis violated his First Amendment right to file a grievance by not providing him with grievances forms and not responding to Plaintiff's requests for grievance forms.

#### 1. Retaliation

To the extent that Plaintiff claims that his ability to write grievances was restricted when he was placed on modified access in retaliation for having filed prior grievances, he fails to state a First Amendment claim. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus–X v. Blatter,* 175 F.3d 378, 394 (6th Cir. 1999). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendants' alleged retaliatory conduct. *See Smith v. Campbell,* 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977)).

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith,* 250 F.3d at 1037; *Shehee,* 199 F.3d at 300–301. However, Plaintiff cannot demonstrate that Defendants Lewis and Norwood subjected him to adverse action when they placed him on modified access. The Sixth Circuit repeatedly has held that placement on modified access does not constitute an adverse action for purposes of a retaliation claim. *See, e.g., Jackson v. Madery,* 158 F. App'x 656, 660 (6th Cir. 2005); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 446 (6th Cir. 2005). Placement on modified access does not prohibit an inmate from utilizing the grievance process. *Walker,* 128 F. App'x at 445; *Corsetti v. McGinnis,* 24 F. App'x 238, 241 (6th Cir. 2001). An inmate may still submit grievances to the grievance coordinator, who reviews the grievance to determine whether it complies with institutional rules regarding the filing of grievances. *See* MDOC Policy Directive 03.02.130 ¶ KK. There is nothing constitutionally improper about this review process for a prisoner who has demonstrated an inability to properly utilize the grievance process in the past. In addition, even if an inmate is improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file an institutional grievance. *See, e.g., Lewis v. Casey,* 518 U.S. 343, 351-55 (1996); *Bounds v. Smith,* 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of available administrative remedies. *See* 42 U.S.C. § 1997e(a). If a prisoner is improperly denied access to the grievance process, the process is rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Walker*, 128 F. App'x at 446.

2. Due Process

Plaintiff alleges that his due process rights were violated by: (1) Defendants Lewis

and Norwood when they placed him on modified access to prevent him from exhausting his administrative remedies in order to keep him from filing suit; and (2) Defendant Norwood because he failed to ensure that Plaintiff was not placed on modified access "without the protection of a full and fair hearing." (*Id.*) Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker,* 128 F. App'x at 445; *Argue v. Hofmeyer,* 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan,* 81 F.3d 1422, 1430 (7th Cir.1996); *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf,* No. 93–2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants Lewis' and Norwood's conduct in placing him on modified access and failing to ensure that he received a hearing before he was placed on modified access did not deprive Plaintiff of due process.

### 3. First Amendment

To the extent Plaintiff claims that Defendant Lewis' failure to provide him with grievance forms or respond to his grievance requests violated his First Amendment rights, he fails to state a claim. As explained above, placement on modified access status does not impinge upon a prisoner's ability to file either meritorious grievances in prison or actions in federal court. *See Walker,* 128 F. App'x at 445–47; *Corsetti,* 24 F. App'x at 241. Simply because Plaintiff's grievances must first be screened prior to their consideration in the normal grievance process does not mean that he is unable to file non-frivolous grievances, or that they will not be properly heard. *See, e.g., Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001) (reaching this conclusion with

regard to MDOC's modified access process). Moreover, if a grievance officer improperly dismissed a non-frivolous claim, a prisoner could still petition a court for redress, having attempted to properly exhaust his administrative remedies first. *See id.* Plaintiff's ability to file non-frivolous grievances, and thus any First Amendment rights that may be implicated by access to the prison grievance procedures, have not been violated.

In light of the foregoing, Plaintiff fails to state a claim against Defendants Lewis and Norwood.

### C. Copies

Plaintiff alleges that Defendants Novak and Orzola violated his First Amendment and due process rights and his right to access the court by failing to make copies for Plaintiff.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's accessibility to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey*

*v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). Further, in order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis*, 518 U.S. at 349; *see also Talley-Bey*, 168 F.3d at 886. The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). Where, as here, "the access claim . . . looks backward,[1]

---

[1] Backward-looking claims "do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable. The ultimate object of these sorts of access claims . . . is not the judgment in a further lawsuit, but simply

the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." *Id.* at 415. "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Finally, the Sixth Circuit has repeatedly held that the constitutional right of access to the courts does not entitle prisoners to free access to photocopying machinery. *See*, *e.g.*, *Bell-Bey, v. Toombs*, No. 93-2405, 1994 WL 105900 (6th Cir. Mar. 28, 1994) ("[T]he law is settled that an inmate does not enjoy a federal constitutional right to unlimited free photocopying services,"); *Hawk v. Vidor*, No. 92-2349, 1993 WL 94007, *1 (6th Cir. Mar. 31, 1993) ("[T]he right to have access to the courts is not interpreted as requiring unlimited access to photocopiers."); *Al- Jabbar v. Dutton*, No. 92-5004, 1992 WL 107016, at *1 (6th Cir. May 19, 1992) ("[A] prisoner's right of access to the courts does not guarantee him unlimited photocopying at the state's expense."); *Bond v. Dunn*, No. 89-6181, 1989 WL 149988, at *1 (6th Cir. Dec. 12, 1989) ("The constitutional right of access to the courts does not require that prison officials provide inmates free access to photocopying machinery."); *Fazzini v. Gluch*, No. 88-2147, 1989 WL 54125, at *2 (6th Cir. May 23, 1989) ("The right of access to the courts does not require that prison officials provide free, unlimited access to photocopy machines."). Even if Defendants Novak's and Orzola's conduct rose to the level of a constitutional violation, in the absence of any allegations to suggest that Plaintiff suffered actual

---

the judgment in the access claim itself, in providing relief obtainable in no other suit in the future." *Christopher*, 536 U.S. at 414 (footnotes omitted). In contrast, the "essence" of a forward-looking claim "is that official action is presently denying an opportunity to litigate for a class of potential plaintiffs. The opportunity has not been lost for all time, however, but only in the short term; the object of the denial-of-access suit . . . is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id.* at 413.

injury, Plaintiff fails to state a claim of constitutional significance. Consequently, Plaintiff fails to state a claim against Defendants Novak and Orzola.

### III.     Motions

Shortly after filing his complaint, Plaintiff filed two motions: (1) a motion for cease and desist order to prevent MDOC from not providing necessary copies (docket #3); and (2) a motion to expedite processing of this claim (docket #6). The motion for a cease and desist order relates to Plaintiff's claim that he is not being provided copies. The motion to expedite relates to Plaintiff's claim that he is not being provided copies or grievance forms, and that he is not receiving responses to his grievances. Because the Court has determined that Plaintiff failed to state any claims against Defendants with respect to the issues raised in Plaintiff's motions, the motions will be denied.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated:  May 28, 2014          /s/ Robert J. Jonker
                              ROBERT J. JONKER
                              UNITED STATES DISTRICT JUDGE